CHARLES LULING et al., Appellants, v. THE ATLANTIC MUTUAL INSURANCE COMPANY, Respondent.

Where a mutual insurance company, aside from its usual risks, issues policies whereby, in consideration of the premium being paid in gold, it agrees to pay any losses in gold, in the absence of any provision to that effect it is not bound to pay dividends declared upon such policies in gold.

(Argued May 17, 1872; decided September term, 1872.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiffs, entered upon the decision of the court at Special Term. (Reported below, 50 Barb., 520; 30 How. Pr. R., 69.)

This action was brought to compel a readjustment of the defendant's statement and declaration of dividend upon its business and earnings for the years 1863 and 1864, and to award plaintiffs' dividends in gold, or proportion them in accordance with their value in currency.

The facts sufficiently appear in the opinion. The court below decided " that, for the purpose of participation in the net earnings, declared applicable to dividend, as aforesaid, the plaintiffs are entitled to have the premiums paid in gold on 'marked off risks,' estimated according to the average market value of gold, in legal tender currency, between the 31st December, 1863, and 26th January, 1864, and 31st December, 1864, and 24th January, 1865, respectively; and to receive additional certificates for the increased dividend resulting from such computation."

*S. P. Nash* for the appellants. This court has jurisdiction to supervise the distribution of the dividends set apart by the trustees of defendant. (*Gregory* v. *Patchell*, 33 Beav., 595; *Henry* v. *Gt. N. W. R. W. Co.*, 4 Kay & J., 1–17; *Dodge* v. *Woolsey*, 18 How. U. S., 331, 341, 342; *Robinson* v. *Smith*, 3 Paige, 231; Ang. & Ames on Corp., § 312; *Hutton* v. *Scarborough, etc., Co.*, 2 De & Sm., 514, affd. 13 Wend., 631.) The dividend should have been returned in the same currency in which the premium was paid. (*Bangs* v. *Duckinfield*, 18 N. Y., 592; *Bangs* v. *Gray*, 12 id., 477; *White* v. *Haight*, 16 id., 310; 12 id., 486; *Sun Mut. Ins. Co.* v. *Mayor, etc.*, 8 id., 241, 249; 16 id., 424.) The obligation to pay in gold was a legal one. (*Trebillock* v. *Wilson*, 12 Wall., 687.)

*Samuel Hand* for the respondent. A court of equity has no power to supervise the internal administration of a joint

stock company. (*State of Louisiana* v. *Bk. of Louisiana*, 6 La., 745; *Brown* v. *Railway Co.*, 4 Eng. L. & Eq., 118; *Karnes* v. *Roch. & G. R.*, 4 Abb. [N. S.], 107; *Stevens* v. *S. Devon R. R. Co.*, 9 Hare, 113 [41 Eng. Ch. R.]; *Gardner* v. *Lon. Chat. & Dov. R. R. Co.*, 15 Wk. Rep., 325, reff'd to, 6 Am. L. Reg., 455.)    If plaintiffs were to receive dividends in gold, they should receive gold money, not gold turned into paper money. (*Bronson* v. *Rhodes*, 7 Wall., 229; *Chrisler* v. *Renois*, 43 N. Y., 209; *Phillips* v. *Speyers*, Ct. Appls., March, 1872.)    Plaintiffs' claim for dividends in gold cannot be sustained under the contract. (*Legal Tender Cases*, 12 Wall., 457; *Met. Bk.* v. *Van Dyck*, 27 N. Y., 400; *Kempton* v. *Bronson*, 45 Barb., 618.)

Gray, C.    The facts necessary to be considered in the disposition of this case are, in substance, these : The defendant was, in July, 1842, organized as a mutual insurance company, under an act of the legislature of this State, passed on the 11th day of the previous April, with power to make marine, fire and life insurances. All its corporate powers were required to be exercised by a board of trustees, and such officers, clerks, etc., as the trustees might from time to time appoint. The trustees were authorized to declare dividends, and the officers of the company to issue certificates of a certain per centum on the premium received for such marked off risks to the persons in whose names the policies of insurance were made. The amounts named in the certificate to be conclusive on the parties entitled to receive them, not to be changed by subsequent events showing the actual payments to be more or less favorable than the estimates. After the passage by congress of the act of February 25, 1862, commonly called the legal tender act, when gold became practically an article in market, like lead, iron or copper, the defendant, for the mutual benefit of its members, and to meet their respective requirements, issued, in addition to the policies theretofore issued by them, policies, the premiums upon each of which were paid in gold; and in consideration

thereof the losses, if any, were made payable in gold. Under this new arrangement, and during the years 1863 and 1864, the company issued several policies; the respective premiums upon which, were paid in gold, and among them, four open policies to the plaintiffs, when gold was worth in paper currency from $1.26 to $2.52, by which, in consideration of the premiums paid in gold, the company agreed to pay the losses, if any should occur, in gold. When dividends of the net profits of the company were declared and certificates issued, no advantages were conceded to those who paid their premium in gold over those who paid in currency; but certificates were issued as if the dollars paid by each party insured, whether in gold or in currency, were of equal value; and this, as I understand, is the foundation of the plaintiffs' complaint. It may be conceded that, upon the premiums paid in gold, greater profit resulted to the company, in proportion to the nominal amount paid, than upon the premiums paid in currency. Be that as it may, it furnishes no test of the obligation to pay profits in gold to those who paid premiums in gold. The company had the right, the moment a gold premium was received, to convert it into currency; and whether it was converted into currency or remained in gold, it became the gross profits of the whole company, and not of any particular class of its members.

The only obligation of the company to the plaintiffs, beyond that incurred by it to those of its members who paid premiums in currency, was to pay to them their losses insured against in gold.

One of the several policies issued to the plaintiffs was issued at a time when gold was worth in currency $1.26. Upon that a loss might have occurred when gold was worth double that sum. In that event the company, to meet its obligation, if it had not been so fortunate as to have the required amount of gold on hand, might have found it necessary to have sacrificed on its currency paid in by other members to procure the necessary amount of gold to comply with its promise. When the company assumed to pay the plaitiffs' losses in gold it

incurred not only the hazard of loss by the perils insured against, but a loss which might arise out of an increased cost or value of gold with which to discharge its obligations. The plaintiff's claim is not only not provided for or implied by their contract with the company, but lacks all the elements necessary to establish its equity.

The order of the General Term should be affirmed, and judgment absolute rendered against plaintiffs, with costs.

All concur.

Order affirmed and judgment accordingly.